# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **BRAKE LANDSCAPING &,** ) | |
| **LAWNCARE, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case number 4:08cv01490 TCM |
| ) | |
| **HAWKEYE-SECURITY INS. CO., and** ) | |
| **THE MIDWESTERN INDEMNITY CO.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This declaratory judgment action is before the Court[1] on the motion of plaintiff, Brake Landscaping & Lawncare, Inc., for partial summary judgment. [Doc. 18] Defendants, Hawkeye-Security Insurance Company and The Midwestern Indemnity Company, oppose the motion.

## Background

This action has its origins in two business owners insurance policies issued by Defendants to Plaintiff: a Commercial General Liability ("CGL") Policy, number CBP 8340291, issued by The Midwestern Indemnity Company, and a Commercial Umbrella Liability ("CUL") Policy, number CU 8340391, issued by Hawkeye-Security Insurance Company. (Pl. Exs. 1A, 2A.) Both policies were issued for a one-year period beginning November 1, 2007. (Id.)

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

The CGL policy includes a provision excluding, in relevant part:

(2) j. Damage to Property

"Property damage" to:

. . .

> 5. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> 6. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Pl. Ex. 2A at 86.)

The CUL policy includes these same two exclusions. (Pl. Ex. 1A at 28.)

The CGL policy includes another provision reading that the exclusion in (2)(j)(6) "does not apply to 'property damage' included in the 'products-completed operations hazard.'" (Pl. Ex. 2A at 87.) A "products-completed operations hazard" is defined as:

> [A] "[p]roducts-completed operations hazard":
>
> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> . . .
>
> (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
> > (a) When all of the work called for in your contract has been completed.

> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(P. Ex. 1A at 39.)

Although the CUL also includes a "products-completed operations hazard" exception, in the CUL policy the exception applies to paragraph 3(o)(5), not subparagraph (6). (Pl. Ex. 2A at 87.) The definition of a "products-completed operations hazard" is the same. (Id. at 98.)

Between April 21 and 28, 2008, an employee of Plaintiff applied Lesco Prosecutor to 13 properties of Plaintiff's customers. (Pl. Ex. A ¶ 6; Defs. Ex. 2 at 32, 36.) The employee was not a licensed applicator. (Defs. Ex. 2 at 26, 30, 64.) Lesco Prosecutor is a non-selective herbicide designed to kill vegetation. (Pl. Ex. A ¶ 7.) Its active ingredient is isoproplylamine salt of glyphosate. (Defs. Ex. 3 ¶ 9.) "Once [glyphosate] has been applied to a plant it immediately begins to kill the plant. There are no antidotes and the effects are irreversible." (Id. ¶ 11.) See also Defendants' Exhibit 2 at 90 (Robert Brake, Plaintiff's owner, testified that once Prosecutor was sprayed, the grass was going to die). The employee should have applied Lesco Momentum, a selective herbicide designed to kill weeds and leave established turf grass unaffected. (Pl. Ex. A ¶¶ 6, 7.) There is no evidence that the application of Prosecutor was done for any reason other than in error.

The error was discovered when the employee purchased additional supplies of Prosecutor and another employee unloading the product from a truck questioned why the purchase was necessary. (Def. Ex. 2 at 46-48.) Which properties had been affected was discovered by driving by customers' properties and seeing if their lawns were showing dying vegetation. (Id. at 58.) The effects usually show in seven to ten days, depending on such factors as the weather, ground temperature, and dilution ratio. (Id. at 39, 58.) Plaintiff had the dead spots on the customers's lawns resotted.

Both Defendants denied coverage on the grounds that the damage was caused because "[Plaintiff's] work" was incorrectly performed. (Pl. Exs. 1B at 8, 2B at 2.) In its motion for partial summary judgment, Plaintiff argues that a plain reading of the two insurance policies compels the conclusion that Defendants are liable for the damages to Plaintiff's customers' properties. Specifically, the exclusion provisions in the CGL policy do not apply because (1) the lack of a definition of the "particular part" renders the language of exclusion j(5) illusory and ambiguous and (2) the exclusion j(6) does not apply because the loss is covered under the "products-completed operations hazard." Plaintiff further argues that the exclusion provisions in the CUL policy do not apply for the same reasons.

Defendants disagree, contending that Plaintiff's employee's faulty work is not an "occurrence"[2]; consequently, there is no coverage. Alternatively, if the work is an "occurrence," it is nonetheless not covered because the two policies exclude damage to (a)

---

[2]"Occurrence" is defined in both policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Pl. Exs. 1A at 38, 2A at 97.)

that particular part of real property on which Plaintiff was performing operations and (b) that particular property that must be restored, repaired, or replaced because Plaintiff's work was incorrectly performed on it.

**Discussion**

"Rule 56(c) [of the Federal Rules of Civil Procedure] 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" **Erenberg v. Methodist Hosp.**, 357 F.3d 787, 791 (8th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). Where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate. See **Adams v. Boy Scouts of America - Chickasaw Council**, 271 F.3d 769, 775 (8th Cir. 2001); **Gordon v. City of Kansas City, Mo.**, 241 F.3d 997, 1002 (8th Cir. 2001).

In this insurance dispute, Missouri law is applicable, see **J.E. Jones Const. Co. v. Chubb & Sons, Inc.**, 486 F.3d 337, 340 (8th Cir. 2007); **Capitol Indemn. Corp. v. 1405 Assocs., Inc.**, 340 F.3d 547, 549 (8th Cir. 2003); and holds that an insurance policy is a

contract and is governed by the rules of contract construction, see **Leonards v. Southern Farm Bureau Cas. Ins. Co.**, 279 F.3d 611, 613 (8th Cir. 2002); **Blair v. Perry County Mut. Ins. Co.**, 118 S.W.3d 605, 606 (Mo. 2003) (en banc).  "Under Missouri law, the claimant has the burden to show that the policy covers the loss," **J.E. Jones Const.**, 486 F.3d at 340; however, "'the insurer has the burden of proving that an insurance policy exclusion applies,'" **American Econ. Ins. Co. v. Jackson**, 476 F.3d 620, 623 (8th Cir. 2007) (quoting American Family Mut. Ins. Co. v. Co Fat Lee, 439 F.3d 436, 439 (8th Cir. 2006)) (alteration in original).  "An exclusion relied upon to deny coverage must be clear and free from doubt." **Id.** (internal quotations omitted).  Accord **Freeman v. State Farm Mut. Auto. Ins. Co.**, 436 F.3d 1033, 1035 (8th Cir. 2006).  "If there is any ambiguity in the policy, it inures to the benefit of the insured, not the insurer." **Machea Transp. Co. v. Philadelphia Indem. Co.**, 463 F.3d 827, 832 (8th Cir. 2006).  "Mere disagreement by the parties[, however,] regarding a contract term's interpretation does not render the term ambiguous." **Lindsay v. Safeco Ins. Co.**, 447 F.3d 615, 617 (8th Cir. 2006).

Plaintiff first argues that the relevant exclusions only apply if the damage occurs while the operations are ongoing.  The exclusion uses the present tense – "*are*."  Plaintiff argues that the grass did not immediately die; thus, the exclusion does not apply.  Plaintiff conflates consequences and manifestations.  The grass, and other sprayed vegetation, died as a result of a completed operation – the application of the wrong product to customers' lawns.[3]  That

---

[3]As noted above, Robert Blake testified that the grass was going to die as a result of the application of Prosecutor.  He also testified that he did not consider grass to be dead if it was still green.  He is not a chemist.  (See Brake Dep. at 37, 48.)  A blade of grass may be green if

the effect of the deadly spraying was not immediately apparent does not render the exclusion inapplicable.

Plaintiff next argues that the exclusions in paragraph (2)(j)(5) of the CGL and 3(o)(5) of the CUL for "property damage" do not apply because the only "particular part" of its customers' properties that was the subject of its operations was the weeds.

The Missouri Supreme Court had occasion to analyze whether complained-of damage was caused to a "particular part" of real property in **Columbia Mut. Ins. Co. v. Schauf**, 967 S.W.2d 74 (Mo. 1998) (en banc). The court noted that the CGL policy at issue, one with comparable terms to Plaintiff's CGL and CUL policies, was "not intended to protect business owners against every risk of operating a business." **Id.** at 77.

> Business risks are those risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control and manage. Excluding such risks from coverage lowers insurance rates and provides an incentive for business owners to manage their business more effectively. The [business [risk [exclusions are based on the apparently simple premise that general liability coverage is not intended as a guarantee of the quality of in insured's product or work.

**Id.** (alterations in original) (internal quotations omitted). The "property damage" provision at issue was a business risk exclusion "excluding from coverage damage to the particular part of property on which the insured is performing operations." **Id.** "The possibility of damaging the property on which one is working is the type of routine, controllable, and limited risk that constitutes a business risk." **Id.** at 78. It applies "to the exact property that

---

recently picked, but it is dead.

was the subject of the insured's work when damaged, but not to property that was 'incidental' to that work . . . ." **Id.**

The question in **Schauf** was whether "the particular part" requirement applied when a subcontractor hired to paint cabinets caused a fire that extensively damaged a new house. The fire was caused by the painter cleaning his spraying equipment in the new house, something he did as a normal part of his operations. **Id.** at 79. The court noted that one reasonable interpretation of the exclusion advocated by the subcontractor, i.e., that the exclusion applied only to the cabinets, would be that it applies to "only the part of the property that is the subject of the insured's work at the time of the damage." **Id.** at 80. Another reasonable interpretation, one urged by the insurer, was that "any damage the insured causes to property in the area in which he was contracted to work would be excluded from coverage." **Id.** The court resolved the ambiguity created by the existence of two, contrary reasonable interpretations by favoring the narrower one. **Id.** at 80-81. In doing so, however, the court further noted that its resolution was consistent with the other qualification in the exclusion that it applied to "'property *on* which [the insured] is performing operations.'" **Id.** at 81 (alteration in original).

The damage now at issue was caused by the spraying of Plaintiff's customer's lawns. Plaintiff's attempt to avoid application of this exclusion by arguing that it was the weeds that were the subject of its operations and not the grass is too tortuous a reading to be reasonable. The weeds were *in* the lawn. They were sprayed just as the grass was. Unfortunately, the grass died just as the weeds did.

**Conclusion**

Plaintiff has failed to establish the lack of a genuine issue or material fact entitling it a summary judgment finding that the damage to its customers' lawns caused by an application of the incorrect herbicide is covered under its CGL and CUL. [4]

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Brake Landscaping & Lawncare, Inc., for partial summary judgment is **DENIED**. [Doc. 18]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  29th  day of September, 2009.

---

[4] In its response to Defendants' motion for summary judgment, Plaintiff advances other arguments not raised in its motion. These arguments will be addressed when Defendants' motion is ruled.